United States District Court
Southern District of Texas
**ENTERED**
September 09, 2026
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DOMINIQUE ANDREWS, (BOP # 13548-510) | § | |
| *Petitioner*, | § | CRIMINAL NO. H-22-316-1 |
| vs. | § | CIVIL NO. H-25-4395 |
| UNITED STATES OF AMERICA, | § | |
| *Respondent*. | § | |

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is petitioner Dominique Andrews's motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. (Crim. 4:22-cr-316-1, Dkt. 78; Civil 4:25-cv-4395, Dkt. 1). He proceeds here *pro se*. The Government filed a response in opposition to the motion. (Crim. 4:22-cr-316-1, Dkt 85). Andrews did not file a reply, and his time to do so has now expired. Having considered the motion, the response, the record, and the applicable law, the Court denies the motion without a hearing for the reasons explained below.

## I. BACKGROUND

In June 2022, a federal grand jury returned an indictment charging Andrews with two counts of interference with commerce by robbery and two counts of discharge of a firearm during and in relation to a crime of violence. (Crim. 4:22-cr-

316-1, Dkt. 1). On May 2, 2023, Andrews pleaded guilty to both robbery counts and one of the firearm counts. (Dkt. 30). In exchange for his plea, the Government agreed to dismiss the second firearm count and to decline to charge him with several additional robbery and firearm offenses. (Dkt. 33, p. 5).

At the rearraignment hearing on May 2, 2023, after being placed under oath, Andrews told the Court that he had had sufficient time to consult with his attorney about his plea. (Dkt. 66, p. 3). He also told the Court that he was satisfied with his attorney's representation. (*Id.* at 4). Counsel stated that he had had sufficient time to investigate the law and the facts of the case. (*Id.*).

The Court then addressed the elements of the offenses and the potential sentences, which Andrews said he understood. (*Id.* at 4–6). The Court reviewed the rights Andrews was giving up by entering his plea, (*Id.* at 6–7), and Andrews stated that he understood those rights and was choosing to waive them. (*Id.* at 7). As part of that colloquy, the following occurred:

> THE COURT: Do you also understand that if I accept your plea of guilty, **you will be waiving all non-jurisdictional defects**, if any, in this prosecution such as, **for example, any illegal search and seizure**, a violation of your right to a speedy trial, and an inadmissible statement if you made one. **In other words, if I accept your plea of guilty, you will not be able to raise these defenses at a later time**. Do you understand that by pleading guilty you waive all these rights as I just described?
>
> THE DEFENDANT: Yes, sir.

(*Id.*). Andrews denied under oath that any promises had been made to get him to plead guilty or that he had been threatened, forced, or coerced into doing so. (*Id.* at 10). He stated that he was ready to enter a guilty plea to the three counts identified in his plea agreement. (*Id.* at 11). The Court asked counsel whether he knew of any meritorious defenses as to any of the counts, and counsel responded in the negative. (*Id.*).

The Government then presented the following factual basis for the plea:

> If we were called to prove this case beyond a reasonable doubt, it would prove that at all times during the commission of this offense Auto Zone is a company headquartered in Memphis, Tennessee, and operates an aftermarket automotive parts accessories business throughout the United States, Mexico, Brazil and Puerto Rico; and the purchase and sale of Auto Zone's products involves United States currency and consumer goods, which are shipped in interstate commerce, which affect interstate commerce.
>
> That on February 4th of 2022, an employee of the Auto Zone located at 14447 Cullen Boulevard in Houston, Texas, within the Southern District of Texas was robbed at gunpoint. This robbery at this location impacted its interstate commerce. The gunman was Dominique Andrews, the defendant before the Court today. Andrews produced a silver semiautomatic firearm and demanded money from the employee victim. The employee victim was in fear of injury for their life during the robbery and Andrews took approximately $300 in U.S. currency from the cash register of the Auto Zone and two car scanners. Andrews discharged a round from the firearm he was carrying while in commission of the robbery. Andrews was positively identified as the robber by the employee victim.
>
> Again, on February 4th of 2022, an employee of the Auto Zone located at 5501 Telephone Road in Houston within the Southern District of Texas was robbed at gunpoint. This robbery at this location impacted interstate commerce as well.

> The gunman and robber was identified as Dominique Andrews, the defendant in court today. Andrews produced a silver semiautomatic firearm and demanded money from the employee victim. The employee victim was in fear of injury for their life during the robbery. Andrews took about $900 in U.S. currency money belonging to Auto Zone.
>
> Andrews discharged several rounds from the firearm he was carrying in the commission of this robbery and Andrews was wearing the same clothes, driving the same car and discharged the same firearm as used in the Cullen Boulevard Auto Zone robbery on the same day.
>
> The firearm is a 9mm Luger Taurus, Model PTIII Millennium G2 semiautomatic pistol with Serial Number TIR31747. NIBIN tests linked and recovered the firearm in both Auto Zone robberies that were committed by this defendant in court, Dominique Andrews, on February 4, 2022.

(*Id.* at 11–13). Andrews admitted that the facts presented were true and that he intended to commit the acts described. (*Id.* at 13).

Andrews also assured the Court, while still under oath, that he had read and understood the terms of the plea agreement. (*Id.* at 14). He signed the plea agreement in open court, again swearing that he fully understood all of his rights with respect to the indictment and that he had read and understood all of the terms of the plea agreement. (Dkt. 33, pp. 15–16). Based on these assurances, the Court found Andrews's plea was knowingly and voluntarily entered and found that he understood the nature of the proceedings and the consequences of his plea. (Dkt. 66, p. 14). The Court then accepted his plea and set the case off for sentencing. (*Id.* at 14–15).

More than two months later and shortly after receiving the preliminary Pre-Sentence Investigation Report, counsel for Andrews filed a motion to withdraw, stating that Andrews wanted to withdraw his guilty plea because he believed that counsel had not fully explained certain consequences of his plea. (Dkt 37). The motion was denied after a hearing at which Andrews "could not specifically point to how his attorney was unfit." (Dkt. 39, p. 2). Andrews later filed letters with the Court expressing his concerns that counsel had not filed a motion to suppress. (Dkts. 46, 48). Counsel also filed a separate motion to have substitute counsel appointed. (Dkt. 47). The Court reviewed the letters and the motion to substitute counsel and denied the motion. (Dkt. 49).

The day before sentencing, Andrews filed a *pro se* motion to withdraw his guilty plea. (Dkt. 54). In that motion, Andrews contended that he entered his plea believing that counsel had filed a motion to suppress the evidence seized from his home after his arrest. (*Id.* at 1–2). He contended that if the motion had been filed, it would have been granted and all of the charges against him would have been dismissed for lack of evidence. (*Id.* at 2–3). He also contended that he entered his plea without understanding that he was giving up his right to a jury trial, the right to confront and cross-examine witnesses, and the right not to be compelled to incriminate himself. (*Id.* at 4). He further alleged that there was no factual basis for his plea if the evidence obtained during the search was suppressed. (*Id.* at 5).

At the sentencing hearing on August 24, 2023, the Court stated that it had reviewed Andrews's *pro se* motion and had considered the statements he made in it relative to how he had testified at the rearraignment hearing. (Dkt. 55). The Court then denied the motion to withdraw the plea. (*Id.*). Andrews was sentenced to an upward-variance sentence of 180 months in prison on each of the robbery counts, to run concurrently with each other, and to a consecutive term of 120 months on the firearm count, all followed by five years of supervised release. (Dkt. 68, p. 18–19). Judgment was entered on August 25, 2023. (Dkt. 59).

Andrews filed an appeal, challenging only the legality of his sentence. (Dkt. 61). The Fifth Circuit affirmed. *See United States v. Andrews*, No. 23-20415, 2024 WL 3408620 (5th Cir. July 15, 2024). Andrews did not seek further review in the United States Supreme Court.

On September 12, 2025, Andrews, proceeding *pro se*, filed this motion under § 2255, raising a single claim of ineffective assistance of counsel based on counsel's failure to investigate, file, and prosecute a motion to suppress the evidence obtained during the search of Andrews's residence. (Crim. 4:22-cr-316-1, Dkts. 78, 79; Civil 25-cv-4395, Dkts 1, 2). Andrews alleges that the failure to file such a motion resulted in him entering an involuntary plea. (Crim. 4:22-cr-316-1, Dkt. 79, p. 3; Civil 4:25-cv-4395, Dkt. 2, p. 3). Specifically, he contends that had counsel informed him that the motion to suppress was either never filed or had been

withdrawn, he would have rejected the plea agreement and insisted on going to trial. (*Id.*).

The Court ordered the Government to respond to the motion, (Crim. 4:22-cr-316-1, Dkt. 82), and the Government filed a response in opposition. (Dkt. 85). It contends that counsel was not deficient for failing to file a meritless motion to suppress, and that Andrews has failed to show that he was prejudiced by the failure to file such a motion. (*Id.* at 9–12). Andrews did not file a reply, and his time to do so has now expired.

## II. LEGAL STANDARDS

### A. Motions Under 28 U.S.C. § 2255

"Relief under . . . § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Hedrick*, 832 F. App'x 347, 348 (5th Cir. 2020) (per curiam) (quoting *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992) (per curiam)). In keeping with this limited scope, a petitioner seeking relief under § 2255 must establish one of four grounds for relief: (1) "the sentence was imposed in violation of the Constitution or laws of the United States," (2) "the court was without jurisdiction to impose such sentence," (3) "the sentence was in excess of the maximum authorized by law," or (4) the sentence "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a).

But even constitutional errors may not be raised for the first time in a § 2255 motion unless the petitioner shows both cause for the procedural default and actual prejudice resulting from the alleged error. *See Bousley v. United States*, 523 U.S. 614, 622 (1998); *United States v. Scruggs*, 691 F.3d 660, 666 (5th Cir. 2012). To prove "cause," the petitioner must "show that 'some objective factor external to the defense' prevented him from raising on direct appeal the claim he now advances." *United States v. Guerra*, 94 F.3d 989, 993 (5th Cir. 1996) (quoting *Romero v. Collins*, 961 F.2d 1181, 1183 (5th Cir. 1992) (per curiam)); *see also United States v. Cruise*, Civil No. H-25-2169, 2026 WL 1052851, *17 (S.D. Tex. Apr. 16, 2026). To prove "actual prejudice," the petitioner must show that he has suffered an actual and substantial disadvantage as a result of the alleged error. *See United States v. Frady*, 456 U.S. 152, 170 (1982). This is a "significantly higher hurdle" than the plain error standard required on direct appeal. *Id.* at 166. But this higher standard is appropriate because once the opportunity for direct appeal has been exhausted, courts are entitled to presume the petitioner was fairly convicted. *Id.* at 164; *see also United States v. Cervantes*, 132 F.3d 1106, 1109 (5th Cir. 1998) (presuming defendant to be fairly and finally convicted after direct appeal).

A § 2255 motion may be denied without a hearing if the record conclusively shows that the movant is not entitled to relief. *United States v. Valles,* No. 19-50343, 2023 WL 248889, *1 (5th Cir. 2023). This means that an evidentiary hearing will

not generally be required when "either (1) the movant's claims are clearly frivolous or based upon unsupported generalizations, or (2) the movant would not be entitled to relief as a matter of law, even if his factual assertions were true." *Id.* (citing *United States v. Harrison*, 910 F.3d 824, 826–27 (5th Cir. 2018)). Conclusory or speculative allegations do not require an evidentiary hearing. *See United States v. Edwards*, 442 F.3d 258, 264 & 268 n.10 (5th Cir. 2006). Nor will such allegations give rise to a constitutional issue and thus a right to collateral relief. *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989) (per curiam) (citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)).

### B. ***Pro Se* Pleadings**

Because Andrews is proceeding *pro se*, the Court construes his filings liberally, subjecting them to "less stringent standards than formal pleadings drafted by lawyers[.]" *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam). Under this less stringent standard, courts consider the substance of the relief sought rather than the label the *pro se* party has attached to it in determining the nature of the claims made. *See Hernandez v. Thaler*, 630 F.3d 420, 426 (5th Cir. 2011) (per curiam). But even under this lenient standard, *pro se* litigants must still "abide by the rules that govern the federal courts." *E.E.O.C. v. Simbaki, Ltd.*, 767 F.3d 475, 484 (5th Cir. 2014). They "must properly plead sufficient facts that, when liberally construed, state a plausible claim to relief, serve defendants, obey discovery orders,

present summary judgment evidence, file a notice of appeal, and brief arguments on appeal." *Id.* (footnotes omitted).

## III. DISCUSSION

Andrews's sole claim is based on ineffective assistance of counsel. Ineffective assistance of counsel, if shown, satisfies the requisite cause-and-prejudice standard. *See United States v. Acklen*, 47 F.3d 739, 742 (5th Cir. 1995). Such claims are therefore properly raised for the first time in a § 2255 motion. *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991) (en banc).

Claims of ineffective assistance of counsel, whether at trial or on direct appeal, are governed by the two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires a § 2255 petitioner to show both that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Id.* at 687. "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id.*; *see also United States v. Pringler*, 765 F.3d 445, 450 (5th Cir. 2014) ("If proof of one element is lacking, the court need not examine the other." (quoting *Kirkpatrick v. Blackburn*, 777 F.2d 272, 285 (5th Cir. 1985))).

To establish the deficient-performance prong of *Strickland*, the petitioner must show that counsel's performance fell below an objective standard of reasonableness. *Id.* at 687–88. To meet this standard, counsel's error must be "so

serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687; *see also Buck v. Davis*, 580 U.S. 100, 118–119 (2017) (reaffirming that "[i]t is only when the lawyer's errors were 'so serious that counsel was not functioning as the "counsel" guaranteed . . . by the Sixth Amendment' that *Strickland*'s first prong is satisfied") (citation omitted). In addition, because of the risk that hindsight bias will cloud a court's review of counsel's trial strategy, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *United States v. Fields*, 761 F.3d 443, 453 (5th Cir. 2014) (quoting *Strickland*, 466 U.S. at 689). "A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Cotton v. Cockrell*, 343 F.3d 746, 752–53 (5th Cir. 2003) (quoting *United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002)). Therefore, "[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support

the limitations on investigation." *Fields,* 761 F.3d at 454 (quoting *Strickland*, 466 U.S. at 690–91).

In addition to showing deficient performance, the petitioner alleging ineffective assistance of counsel must also show that he was prejudiced by that deficient performance. *See Strickland*, 466 U.S. at 687. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* In essence, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "[T]he question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently." *Harrington v. Richter*, 562 U.S. 86, 111 (2011). Instead, "[t]he likelihood of a different result must be substantial, not just conceivable." *Id.* at 112.

In the context of a guilty plea, prejudice occurs if there is a reasonable probability that, but for counsel's deficiencies, the defendant "would not have pleaded guilty and would have insisted on going to trial." *United States v. Valdez*, 973 F.3d 396, 402–03 (5th Cir. 2020) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). When the claim is based on counsel's failure to raise a Fourth Amendment

issue, "the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the [outcome] would have been different absent the excludable evidence in order to demonstrate actual prejudice." *United States v. Dowling*, 458 F. App'x 396, 398 (5th Cir. 2012) (quoting *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986)).

When considering the validity of a guilty plea, courts consider "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Lockhart*, 474 U.S. at 56 (cleaned up). In doing so, "[c]ourts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Lee v. United States*, 582 U.S. 357, 369 (2017). Factors relevant to determining whether a defendant would have refused to plead guilty and would have gone to trial include "the risks [he] would have faced at trial," "his 'representations about his desire to retract his plea,'" and "the district court's admonishments." *Valdez*, 973 F.3d at 403 (quoting *United States v. Batamula*, 823 F.3d 237, 240 n.4 (5th Cir. 2016) (en banc)).

In his § 2255 motion, Andrews alleges that counsel provided ineffective assistance by failing to fully investigate the law as it related to the facts and circumstances of the case and then by misadvising him concerning whether a motion

to suppress had been filed, whether it was filed and then withdrawn, or whether it was never filed. (Dkt. 79, p. 1–2). He also alleges that had counsel told him that signing the plea agreement required withdrawal of the motion to suppress, he would not have signed it. (*Id.* at 3).

The record includes a copy of what is represented to be the proposed motion to suppress. (Dkt. 80). That motion alleges that Houston police were investigating a series of robberies and obtained information that Andrews might be involved. (*Id.* at 2). A complainant from an unrelated investigation contacted the police, told them Andrews was at the residence he shared with her, and gave officers permission to enter the home and search even though she was not there. (*Id.*). Officers went to the home with an arrest warrant for Andrews, but no search warrant. (*Id.*) At the officers' request, Andrews came out of the house, and he was arrested outside of the house pursuant to the arrest warrant. (*Id.*) After the arrest, officers asked Andrews for consent to enter and search the residence, but he refused. (*Id.*) Despite this refusal, officers entered the home to conduct a "protective sweep," during which they found a firearm in plain view matching the description of the one used in the robberies. (*Id.*). It was seized "in compliance with safety procedures to secure the location before they left." (Dkt. 46, p. 3).

Under *Georgia v. Randolph*, 547 U.S. 103 (2006), Andrews's on-scene refusal to grant consent to search may have vitiated any consent given by the other resident

who was not present when the search occurred. Thus, there may have been a legal basis for the motion to dismiss, and Andrews's allegations are sufficient to raise fact questions concerning the deficient performance element of his ineffective assistance claim.[1] But he offers no credible evidence to satisfy the prejudice element of his claim.

The mere fact that counsel failed to file what may have been a meritorious motion does not establish prejudice. *See Premo v Moore*, 562 U.S. 115, 129 (2011) ("A defendant who accepts a plea bargain on counsel's advice does not necessarily suffer prejudice when his counsel fails to seek suppression of evidence, even if it would be reversible error for the court to admit that evidence."). Instead, Andrews must show that he was prejudiced, i.e., that he would not have entered his guilty plea

[1]The record tends to show that counsel may have had strategic reasons for recommending that Andrews forgo prosecuting the motion to suppress and instead enter a guilty plea when he did. The plea agreement states that in exchange for Andrews's plea, the Government would "not charge additional counts of Hobbs Act robbery or Brandishing/Discharging of a Firearm during a Crime of Violence." (Dkt. 33, p. 5). As the Supreme Court has recognized, various considerations go into the decision to enter a plea, including "pleading to a lesser charge and obtaining a lesser sentence, as compared with what might be the outcome not only at trial but also from a later plea offer if the case grows stronger and prosecutors find stiffened resolve." *Premo v. Moore*, 562 U.S. 115, 124 (2011). Such considerations may have been in play in this case. However, because Andrews has failed to show prejudice, the Court need not address whether such strategic decisions supported counsel's decision not to file what appears to be at least arguably a meritorious motion.

and would have instead proceeded to trial, but for counsel's deficient performance. He has failed to do so in two ways.

First, Andrews's assertion of prejudice premised on the remaining evidence being legally insufficient to support a conviction is factually incorrect. The only evidence obtained during the allegedly illegal search was the firearm that was used to commit the robberies. But the Government's evidence also included the testimony of at least two victims who affirmatively identified Andrews as the perpetrator. It also included surveillance video from both scenes, showing Andrews driving his girlfriend's car to and from the scene of both robberies. (Dkt. 50, pp. 5– 6). Even without the firearm, the Government's evidence of Andrews's guilt was overwhelming, and Andrews cannot show that he was prejudiced by the failure to file a motion that would not have altered the outcome even if granted. *See, e.g., Kimmelman*, 477 U.S. at 375 (noting that proving prejudice based on failure to file a motion to suppress requires showing a reasonable probability that the outcome would have been different absent the excludable evidence); *Martinez v Dretke*, 426 F. Supp. 2d 403, 445–46 (W.D. Tex. 2006) (petitioner could not establish that he was prejudiced by counsel's failure to file a motion to suppress when the remaining evidence was overwhelming, so any alleged error was harmless). Andrews hasn't made the required showing of prejudice on this basis.

Second, Andrews's contention that he would not have pleaded guilty had he known the motion to suppress was not going to be addressed is expressly contradicted by his own sworn testimony at the rearraignment hearing. The Court specifically asked Andrews whether he understood that by entering his plea, he was waiving all non-jurisdictional defects, including "for example, any illegal search and seizure." (Dkt. 66, p. 7). Under oath, Andrews stated that he understood. (*Id.*). He then stated that, even understanding these rights, he wished to enter the plea. (*Id.* at 11). Regardless of whether counsel filed the motion and withdrew it or never filed it in the first place, Andrews was aware before he entered his plea that the motion would not be heard. And he nevertheless entered his guilty plea.

The statements Andrews made at the rearraignment hearing contradict his current *post hoc* assertion that he would not have entered a guilty plea had he known the Court was not going to entertain his motion to suppress. His current self-serving statements do not provide credible evidence of prejudice sufficient to warrant an evidentiary hearing. *See, e.g., Lee,* 582 U.S. at 369 (noting that courts should not upset a plea based on *post hoc* assertions from a defendant that conflict with evidence contemporaneous with entry of the plea); *United States v Arledge*, 597 F. App'x 757, 759 (5th Cir. 2015) (per curiam) (noting that a district court may consider its own knowledge of the record and "clear contradictions between an affidavit and other record documents to determine whether the § 2255 movant is entitled to 'no relief'").

This determination is further supported by Andrews's utter inability to articulate any specific deficiency in counsel's performance at the post-plea hearing on his motion to substitute counsel. (Dkt. 39, p. 2).

For both reasons, Andrews does not allege any credible facts showing that he was prejudiced by his attorney's failure to file a motion to suppress. In the absence of such evidence, he is not entitled to either relief or an evidentiary hearing on this claim, and his motion will be denied.

## IV. CERTIFICATE OF APPEALABILITY

A certificate of appealability is required before Andrews may appeal. *See Hallmark v. Johnson*, 118 F.3d 1073, 1076 (5th Cir. 1997) (both § 2254 and § 2255 require a certificate of appealability). "This is a jurisdictional prerequisite because the COA statute mandates that '[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals.'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citing 28 U.S.C. § 2253(c)(1)).

A certificate of appealability will not issue unless a defendant makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requires the petitioner to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). The defendant must show "that reasonable jurists could debate

whether (or, for that matter, agree that) the [§ 2255 motion] should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El*, 537 U.S. at 336 (quoting *Slack*, 529 U.S. at 484). As to claims that a district court rejects solely on procedural grounds, the defendant must show both that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484. A district court may deny a certificate of appealability on its own, without requiring further briefing or argument. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (per curiam).

After carefully considering the record, the Court concludes that reasonable jurists would not find the Court's determination of Andrews's constitutional claims either debatable or wrong. No certificate of appealability will therefore be issued.

## V. CONCLUSION AND ORDER

Based on the foregoing, the Court **ORDERS** as follows:

1. Petitioner Dominique Andrews's motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, (Dkt. 78), is **DENIED**.

2. Any other pending motions are **DENIED** as moot.

3. A certificate of appealability will not be issued.

3. This is a final judgment.

The Clerk will provide a copy of this Order to the parties.

SIGNED at Houston, Texas, on Sept. 8, 2026.

DAVID HITTNER
UNITED STATES DISTRICT JUDGE